IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Brigitte Brozenec, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 09 C 6916 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| First Industrial Realty Trust, Inc., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Brigitte Brozenec sues First Industrial Realty Trust, Inc. for employment discrimination, alleging First Industrial violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5(e), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. First Industrial moves for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I.     Local Rule 56.1

Local Rule 56.1 is not ambiguous in its requirements. The moving party must submit a memorandum of law and a statement of material facts not to exceed 80 short numbered paragraphs that cite affidavits, the record or other materials supporting the facts in each paragraph. L.R. 56.1(a)(2), (3). The opposing party must submit a memorandum of law and a *concise* response to the movant's statement, including specific references to affidavits, the record or other supporting materials. L.R. 56.1(b)(2), (3). If the opposing party does not dispute a fact

in its response, the movant's fact is deemed admitted. L.R. 56.1(b)(3)(C). The opposing party may submit a statement of additional facts supporting denial of summary judgment not to exceed 40 *short* numbered paragraphs that refer to supporting affidavits, the record or other materials. L.R. 56.1(b)(3)(C). A district court may require strict compliance with Local Rule 56.1. *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

Brozenec improperly uses her rambling response as a forum for factual argument. *Soleau v. Illinois Dep't of Transp.*, No. 09 C 3582, 2010 WL 2365195, at *1 (N.D. Ill. June 4, 2010) (Conlon, J.). For example, she refuses to admit specific facts in her response despite admitting them in her deposition or responded that she neither admitted nor disputed the asserted facts. *E.g.*, Pl. Resp. at ¶¶ 15, 16, 17, 18, 20, 31, 44, 51;[1] *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (failure to dispute a fact in the manner dictated by Local Rule 56.1 results in the fact's admission). Brozenec asserts additional facts in her response, even though Local Rule 56.1 requires additional facts be presented in a separate statement. L.R. 56.1(b)(3). *E.g.*, Pl. Resp. at ¶¶ 14, 17, 42, 45, 61, 71.

Several paragraphs of Brozenec's statement of additional facts impermissibly set forth four to six allegations. *E.g.*, Pl. Facts at ¶¶ 3, 5, 19, 36, 39, 40. As explained in *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.), additional fact paragraphs are to

---

[1] The court's citation to a paragraph in either plaintiff's or defendant's response to the other's statement of material facts includes both the asserted fact and the corresponding response to the extent they comply with Local Rule 56.1 and are otherwise admissible. "Pl. Resp." refers to plaintiff's response to First Industrial's statement of material facts; "Def Resp." refers to defendant's response to Brozenec's statement of additional material facts; "Pl. Facts" refers to Brozenec's statements of additional material facts; and "Def. Facts" refers to First Industrial's statement of material facts.

include only one or two allegations for each response. Brozenec was limited to no more than 40 short numbered paragraphs. L.R. 56.1(b)(3)(C). If the case justified more than 40 paragraphs, the proper course is to seek leave of court to file excess additional facts; Brozenec did not do so. L.R. 56.1 (committee comment).

First Industrial has not complied with Local Rule 56.1 either. Several of its asserted facts are not supported, in whole or in part, by the accompanying record citation. *E.g.*, Def. Facts at ¶¶ 3, 7, 10, 13, 21; *Malec*, 191 F.R.D. at 583. First Industrial impermissibly characterizes or argues facts in its statement. *Soleau*, 2010 WL 2365195, at *1. In sections of its summary judgment motion, memorandum of law and reply, First Industrial fails to include supporting citations for asserted facts, *e.g.*, Def. Brief at 1-3, 8, and improperly characterizes a fact even though the corresponding record citation does not support the characterization, *e.g.*, Def. Brief at 8 (citing Def. Facts at ¶¶ 10, 21).

Rule 56.1 submissions are to assist the court in "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposes to prove a disputed fact with admissible evidence." *Benuzzi v. Bd. of Educ. of the City of Chicago*, No. 09 C 3510, 2010 WL 2169488, at *1 (N.D. Ill. May 27, 2010) (Conlon, J.) (quoting *Bordelon*, 233 F.3d at 527). Both parties have failed in different respects. The court considers the parties' submissions only to the extent they comply with Rule 56.1's requirements and does not consider factual assertions based upon inadmissible hearsay testimony or settlement discussions. *Malec*, 191 F.R.D. at 585. The court declines to look beyond the parties' Local Rule 56.1 statements to search for genuine trial issues. *Benuzzi*, 2010 WL 2169488 at *1; *see also Greer v. Bd. of Educ. of the City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("[e]mployment discrimination cases are

extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes. . . .'") (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994)).

## II. Background

The following undisputed facts are derived from the parties' Local Rule 56.1 statements. During 2004, Michael Brennan, First Industrial's chief executive officer, established an executive-level chief marketing officer position to raise the company's real estate industry profile. Pl. Resp. at ¶¶ 2, 14. First Industrial initially hired Brozenec, who was unemployed, on a contract basis in September 2004. *Id.* at ¶ 15 (citing Brozenec Dep. at 144:21-23), ¶ 17. When Brozenec joined First Industrial, she had over 28 years experience in brand and strategic marketing and had managed profit and loss responsibilities, global sales strategies, organizational re-engineering, business process transformation and change strategies. Def. Resp. at ¶ 32. Brozenec had held vice-president level positions in marketing with Tenneco Packaging, USG, Inc. and Johnson Diversey, Inc., where she had been laid off; she did not have marketing experience in the real estate industry. *Id.;* Pl. Resp. at ¶¶ 16, 17 (citing Brozenec Dep. at 150:12-151:2).

After several months on a contract basis, Brennan hired Brozenec as the chief marketing officer in December 2004. Pl. Resp. at ¶¶ 3, 18. Her responsibilities included developing, implementing and managing a market strategy for First Industrial's North American and emerging European markets. *Id.* at ¶ 30; Def. Resp. at ¶ 4. Brennan and Brozenec discussed her employment terms; Brennan agreed to most of Brozenec's requests. *Id.* at ¶ 19. Brozenec sought a written employment contract with a severance provision. Pl. Resp. at ¶ 20; Def. Resp. at ¶ 6.

4

Brennan advised Brozenec that only he had a written contract; Brozenec began working as chief marketing officer without a written contract or a severance agreement. Pl. Resp. at ¶¶ 22, 25; Def. Resp. at ¶ 6. Brozenec later learned that Michael Havala and Johansson Yap had employment agreements. Def. Resp. at ¶ 7. Brozenec's starting annual salary was $225,000, plus a bonus that could exceed $400,000, a car allowance, a 401(k) match and other benefits. Pl. Resp. at ¶ 26 (citing Brozenec Dep. 165:5-169:14). First Industrial's marketing department generated no revenue. Pl. Resp. at ¶ 31.

In March 2005, Brozenec hired Jennifer Jimenez as a regional marketing manager. Def. Resp. at ¶ 31. In the nine years prior to joining First Industrial, Jimenez held manager or director-level positions in marketing and had experience in sales and project management. *Id.* at ¶ 33. Jimenez assisted Brozenec with its branding efforts, marketing messages, competitive marketing, audits/analysis and budgeting. *Id.* at ¶ 31. In 2007, Jimenez was promoted to director of corporate marketing, having managerial responsibilities over regional marketing managers. *Id.* Jimenez remained in a supportive role to Brozenec with respect to marketing plans and budget. *Id.*

Brozenec requested an employment agreement with a severance provision during each performance review with Brennan beginning in early 2005. *Id.* at ¶ 8. After learning that First Industrial had entered into written employment agreements with Gerald Pientka and Robert Cutlip in spring 2006, Brozenec believed she was not given a written contract because of her gender. *Id.* at ¶ 13; Pl. Resp. at ¶¶ 42, 43, 45. In writing, Brozenec made requests for a written contract with a severance provision in March 2006, August 2007, early 2008 and August 2008. Pl. Resp. at ¶ 51; Def. Resp. at ¶ 8, 13. In response to those requests, Brennan advised Brozenec

that he could not provide her with a written agreement containing a severance provision without compensation committee approval. Def. Resp. at ¶¶ 9, 19. In August 2008, Brozenec made yet another written request to Brennan; he did not take any action or speak with the compensation committee regarding her request. *Id.* at ¶ 19; Pl. Resp. at ¶ 54.

In 2008, First Industrial was in survival mode: "the company was going through a very difficult time. The market had imploded. Our values of our properties were down, as all real estate was. Stock prices were in freefall, and we had a lot of issues directly in front of us. First and foremost was cost. [Tyler] was asked to assist in that process of looking at the costs of the company to make sure we would survive." Pl. Resp. at ¶¶ 58-59 (citing Tyler Dep. at 95:24-96:7). On October 22, 2008, the board of directors fired Brennan, and replaced him with Edwin Tyler as interim chief executive officer. Pl. Resp. at ¶ 61, 62. On October 24, 2008, First Industrial laid off 109 employees, 25% of its workforce. *Id.* at ¶ 60.

On November 19, 2008, Tyler terminated Brozenec, who was then 54. Pl. Resp. at ¶ 16, 67. First Industrial offered Brozenec a severance payment equal to three months of her salary and health benefits in exchange for a full release. Compl. at ¶ 19; Ans. at ¶ 19. In response to Brozenec's request for additional severance, Tyler consulted the human resources department and determined that three months severance was consistent with payments to other employees based upon seniority and job level. Pl. Resp. at ¶ 68. Brozenec rejected the company's severance offers and received no severance payment. Compl. at ¶ 19; Ans. at ¶ 19.

Following Brozenec's termination, Jimenez became responsible for all marketing functions, and by February 28, 2009, was the only employee remaining in marketing. Pl. Resp. at ¶ 70, 72. Jimenez' annual salary in 2009 was approximately $92,075. Pl. Resp. at ¶ 71.

Brozenec was not asked in November 2008 whether she would accept a full-time marketing director position with a $92,075 annual base salary. Pl. Resp. at ¶ 73 (citing Brozenec Dep. at 35-38). During her deposition, Brozenec did not state she would have accepted the position; rather, she would have needed to discuss the employment terms, including her bonus potential, whether she could work part-time at the same salary, and whether she would maintain her car allowance, first class upgrades and other benefits. *Id.*

On February 12, 2009, Brozenec filed a complaint with the EEOC alleging discrimination based upon gender, age and retaliation. Compl. at ¶ 4; Ans. at ¶ 4; Pl. Resp. at ¶ 44. The EEOC issued a notice of right to sue letter on August 4, 2009. *Id.* On November 3, 2009, Brozenec filed a four-count complaint against First Industrial, alleging gender and age discrimination.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). First Industrial bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If satisfied, the burden shifts to Brozenec to show that a reasonable jury could render a verdict in her favor. *Schuster v. Lucent Techs, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). In considering First Industrial's motion, all facts and reasonable inferences are viewed in a light most favorable to Brozenec. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

## II. Gender Discrimination

### A. Statute of Limitations

First Industrial contends in a footnote that Brozenec's claims are barred by the statute of limitations. Def. Brief at 8, n.4. Because she initiated a state proceeding, Brozenec was required to file her charge of discrimination within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). An unlawful employment practice happens when a discriminatory compensation decision or other practice is adopted, an individual becomes subject to a discriminatory compensation decision or other adverse action, or an individual is affected by application of a discriminatory compensation decision. 42 U.S.C. § 2000e-5(e)(3)(A).

Brozenec claims gender discrimination because of the refusal to provide her with an employment agreement containing a severance provision. Compl. at ¶¶ 27, 28, 33. In spring 2006, Brozenec complained to Brennan that she was being discriminated against on the basis of gender by denial of her renewed request for an employment contract with a severance provision, unlike her male counterparts. Pl. Resp. at ¶ 42. Brozenec did not file her claim with the EEOC until February 12, 2009. Pl. Resp. at ¶ 44. The record reflects Brozenec made repeated requests for an agreement through August 2008, within the 300-day period. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002) (the limitations period applies to each discriminatory employment act); *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010) (each paycheck arising from a discriminatory practice constitutes an independent action that starts the limitations clock).

8

Citing *Noel*, First Industrial contends its denial of a written contract with a severance provision does not constitute a discriminatory compensation practice. Unlike *Noel* that concerned an employer's failure to promote an employee, Brozenec's requests for an agreement containing a severance provision directly implicated compensation. Compensation discrimination "'means paying different wages or providing different benefits to similarly situated employees. . . .'" *Noel*, 622 F.3d at 273 (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010)); *Mikula v. Allegheny County of Pennsylvania*, 583 F.3d 181, 186 (3d Cir. 2009) (failure to respond to request for raise is a compensation decision). As further evidence the alleged discriminatory act concerned compensation, First Industrial's compensation committee had to approve all written employment agreements. Def. Resp. at ¶ 9.

In addition, Brozenec claims gender discrimination because First Industrial treated male employees differently in terms of severance payments. Compl. at ¶ 27. On November 19, 2008, First Industrial terminated Brozenec's employment. Ans. at ¶ 18; Pl. Resp. at ¶ 67. She filed her charge with the EEOC on February 12, 2009. This claim falls within the 300-day limitations period. Accordingly, Brozenec's gender discrimination claims are not time-barred.

**B.   Discrimination Claims Under Counts I and II**

Brozenec may prove gender discrimination either directly or indirectly. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007), *aff'd*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008). She has chosen the indirect method. Pl. Brief at 4. To establish a *prima facie* case, Brozenec must show: (1) she is a member of a protected class; (2) she reasonably met First Industrial's legitimate job expectations; (3) First Industrial took an adverse employment action against her; and (4) First Industrial treated her differently than similarly situated persons

outside her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006). If Brozenec satisfies her burden, First Industrial must articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If it does so, Brozenec must show that First Industrial's explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825; *Burks*, 464 F.3d at 751.

First Industrial argues Brozenec cannot meet the fourth prong of the *McDonnell Douglas* test to establish a *prima facie* gender discrimination case. She must show that "someone who is directly comparable to her in all material respects" was treated differently. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Factors considered are whether the employees reported to the same supervisor, were subject to the same standards and had comparable education, experience and qualifications. *Burks*, 464 F.3d at 751. The court applies common sense to determine whether a meaningful comparison may be made. *Humphries*, 474 F.3d at 405. In doing so, the court does not sit as a "super personnel department" with authority to scrutinize First Industrial's refusal to give Brozenec an employment agreement containing a severance provision. *Benuzzi*, 2010 WL 2169488 at *5 (quoting *Ptasnik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006)).

Brozenec contends Havala, Yap, Draft, Cutlip, Pientka and Stephen Stoner, who had employment agreements with severance provisions, were similarly situated. Havala and Yap helped found the company in 1994, and Draft began working there in approximately 1996. Pl. Resp. at ¶ 3. Havala served as chief financial officer, responsible for the company's financial requirements, and Yap and Draft led the company's two revenue-generating groups, investment

and operations. *Id.* at ¶¶ 4, 6. Havala, Yap and Draft were responsible for generating and managing First Industrial's revenue and finances. *Id.* Draft supervised a department of approximately 30 leasing manager professionals, and Yap oversaw the largest or second largest department. *Id.* at ¶ 5 (citing Brozenec Dep. at 85:7-24). First Industrial reported the compensation of Havala, Draft and Yap to the Securities and Exchange Commission. *Id.* at ¶ 13. Brozenec did not attain the level of responsibility or longevity to be comparable to Havala, Yap and Draft. Pl. Resp. at ¶¶ 14, 16, 31.

The record with respect to Cutlip, Pientka and Stoner is comparable. First Industrial hired Cutlip as the east regional managing director, responsible for business development, investments and acquisitions; Pientka as executive vice president of development, to identify opportunities for purchasing and developing land; and Stoner as the midwest regional managing director. Pl. Resp. at ¶¶ 34, 35, 38, 39. Cutlip and Pientka, like Brozenec, reported directly to Brennan, were considered to be experienced and seasoned executives, strategically directed their departments and had responsibility managing a budget. Def. Resp. at ¶ 24. Whether Cutlip and Pientka required a written contract in order to leave their prior employment to join First Industrial is a disputed question of fact. Pl. Resp. at ¶¶ 36, 40. In addition, neither party has offered facts regarding Cutlip's and Pientka's development responsibilities as compared with Brozenec's marketing duties, the standards by which each was required to carry out their respective responsibilities, and whether they had comparable educational or other qualifications. *Burks*, 464 F.3d at 751; *Benuzzi*, 2010 WL 2169488, *5. The only fact provided concerning Stoner was that he oversaw approximately 50% of First Industrial's 100 million square feet. *Id.* at ¶ 53; Def. Resp. at ¶ 18.

11

First Industrial asserts that Richard Czerwinski, national director, leasing and asset management, David Harker, head of acquisitions, and Donald Stoffle, head of dispositions, may be compared to Brozenec. Def. Reply at 9-10. Assuming these individuals requested employment agreements with severance provisions and reported to Brennan, which is disputed, no other facts have been offered regarding Czerwinski, Harker and Stoffle to make a meaningful comparison with Brozenec. *See* Pl. Resp. at ¶¶ 28, 29, 48, 49, 50. A genuine issue of material fact exists whether Cutlip, Pientka, Stoner, Czerwinski, Harker and Stoffle were similarly situated to Brozenec to determine whether a *prima facie* case of gender discrimination is established.

First Industrial argues that even if Brozenec has established a *prima facie* case, she cannot establish denial of a written employment contract was pretextual. Def. Brief at 8. This begs the question as to whether First Industrial has offered a legitimate, nondiscriminatory reason for refusing to give Brozenec an employment agreement with a severance provision. *Humphries*, 474 F.3d at 407. First Industrial asserts Brennan honestly believed chief marketing officers in the real estate investment trust industry generally did not receive employment contracts, and Brozenec did not require a written contract because she continued to work at First Industrial without one. Def. Brief at 8. First Industrial cites no statement of material facts to support these specific propositions, and thus relies on an inference impermissibly drawn in its own favor.

In addition, a genuine issue of material fact remains whether Brozenec can show First Industrial's explanation was pretextual. *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Brennan's credibility is in question, and his reasoning for not providing Brozenec with an agreement shifted over the years. *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676

(7th Cir. 2003); *Schuster*, 327 F.3d at 577. In response to Brozenec's first request for an employment agreement with a severance provision, Brennan told her only he had such a contract. Pl. Resp. at ¶ 22; Def. Resp. at ¶ 6. Brozenec later learned that Havala, Yap and Draft also had employment agreements, in part because they were founders (though Draft was not a founder). Def. Resp. at ¶¶ 5, 7; Pl. Resp. at ¶ 3. In 2006, Cutlip and Pientka received employment agreements. Def. Resp. at ¶¶ 11, 12. Whether the contract was required to expedite Cutlip's hire, as Brennan contended, is disputed. Pl. Resp. at ¶¶ 11, 14.

When Brozenec renewed her request in early 2006, Brennan replied in a March 21, 2006 email, "I know full well the need to bring parity and I have been working with comp committee to do this." Def. Resp. at ¶¶ 13, 14; Brozenec Dep. Exh. 9. In 2007 and 2008, Brennan did not take Brozenec's requests to the compensation committee. Def. Resp. at ¶¶ 16, 19. Brennan's actions are against a backdrop where, between 1994 and 2008, First Industrial entered into written employment contracts *only* with male employees. Def. Resp. at ¶¶ 1, 2; *Greene v. Potter*, 557 F.3d 765, 769-70 (7th Cir. 2009) ("at least an inference of illegal discrimination" is required) (internal citations omitted). While Brennan hired Brozenec at his new venture following their terminations, Pl. Resp. at ¶ 79, this does not overcome reasonable inferences that may be drawn from record evidence establishing a genuine issue of material fact regarding pretext in denial of Brozenec's request for a written contract with a severance provision.

One final point on Brozenec's gender discrimination claim concerns her allegation that First Industrial treated her differently than similarly situated male employees regarding severance payments. First Industrial improperly relies upon settlement discussions, inadmissible evidence, and a record citation that has nothing to do with Czerwinski. Def. Facts at ¶¶ 69, 75, 76. As

with Cutlip, Pientka and Czerwinski, sufficient facts have not been provided regarding Hally Stanley, senior due diligence analyst, or Sean O'Neill, vice president of corporate communications, who First Industrial argues are comparable to Brozenec for purposes of determining whether she was treated differently with respect to severance payments. Pl. Resp. at ¶¶ 55, 56, 77, 78. With the exception of footnote 11 referring to inadmissible settlement discussions, Brozenec's brief offers no factual or legal argument regarding her allegation. The court declines to create the parties' arguments, especially when they are represented by counsel. *Benuzzi*, 2010 WL 2169488, at *3. A genuine issue of material fact exists regarding Brozenec's gender discrimination claim based upon First Industrial's severance payment practices. Summary judgment must be denied as to Counts I and II.

**III.    Age Discrimination**

The ADEA provides that an employer acts unlawfully in discriminating against an individual over age 40 in employment-related decisions, including hiring, termination, compensation, terms, conditions or privileges. 29 U.S.C. § 623(a)(1). As in a Title VII action, Brozenec may use either the direct or indirect method of proof for her ADEA claim. *Glover v. U.S. Healthworks*, 326 Fed. Appx. 964, 967 (7th Cir. 2009). Brozenec relies on the indirect method. Pl. Brief at 10. The parties agree Brozenec has established a *prima facie* case of age discrimination utilizing the indirect method in a reduction in force context: she is over 40 years old; she performed her job adequately; she was terminated; and Jimenez, a younger employee, became responsible for all marketing functions. Def. Brief at 9; Pl. Brief at 10; Def. Reply at 12. *Glover*, 326 Fed. Appx. at 967 (citing *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007)).

14

The burden shifts to First Industrial to establish a legitimate, nondiscriminatory reason for terminating Brozenec. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824; *Ptasnik,* 464 F.3d at 696. First Industrial has satisfied its burden because the company was in "survival mode" in 2008, Brozenec's termination was one of 109 employees as part of its reductions in workforce. Pl. Resp. at ¶¶ 58-60. As a result, the burden shifts to Brozenec to show First Industrial's reasoning was a pretext for terminating her on the basis of age. *McDonnell Douglas*, 411 U.S. at 804; 93 S. Ct. at 1825; *Ptasnik,* 464 F.3d at 696. Because the parties agree this is a reduction in force situation, Brozenec "must establish that an improper motive tipped the balance in favor of discharge or that the employer did not honestly believe in the reasons it gave for firing [her]." *Schuster,* 327 F.3d at 574 (internal citations omitted); *Yonehara v. American Airlines, Inc.*, No. 02 C 8561, 2004 WL 2222184, at *16 (N.D. Ill. Sept. 30, 2004) (Coar, J.).

To support her argument that First Industrial's reasoning was pretextual, Brozenec contends her education, experience and marketing/business skills far exceeded Jimenez'. Def. Resp. at ¶¶ 31-33. It is not within the court's province to review business decisions. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573 (7th Cir. 1998). While the parties agree she was more qualified, Brozenec's annual base salary was $225,000 as compared to Jimenez'$92,075 salary. Pl. Resp. at ¶¶ 26, 71. Brozenec had a significant bonus potential, car allowance, 401(k) match and other benefits. *Id.* First Industrial could have reasonably considered Brozenec's compensation level, while ignoring her age, in deciding to terminate her. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir. 1994) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).

15

Brozenec contests First Industrial's cost-cutting explanation for her termination, citing its $1,000,000 payment to Tyler for less than three month tenure as the interim chief executive officer; $875,324 payment to Cutlip, who was terminated in December 2008; $253,117 bonus payment to Pientka, who was terminated on February 27, 2009; payments in excess of $5,000,000 in 2008 and 2009 for new business generation bonuses; and payments to certain employees for increased salaries totaling $800,000. Def. Resp. at ¶ 35, 36.[2] Unlike *Mangrum v. Morrison Timing Screw Co.*, No. 03 C 3891, 2004 WL 2581091, at *9 (N.D. Ill. Aug. 3, 2004) (Coar, J.), Brozenec does not contend that First Industrial's reduction in force was a ruse, and there has been no showing that it hired new employees, purchased new equipment, increased employees' overtime hours, made discretionary 401(k) payments or increased sales.

The proper focus is whether First Industrial honestly believed its explanation for terminating Brozenec. *Fairchild*, 147 F.3d at 573; *Mangrum*, 2004 WL 2581091, at *9. Given the company's financial condition, First Industrial laid off 109 employees on October 24, 2008, 25% of its workforce. Pl. Resp. at ¶ 60. Tyler, the interim chief executive officer, believed that marketing and brand development were not priorities, First Industrial did not have the money for major marketing campaigns and could no longer sustain a high-level, high-salaried marketing officer. Pl. Resp. at ¶ 64. The marketing department's annual budget was reduced approximately 80% between 2008 and 2009. Pl. Resp. at ¶ 65. Brozenec has not questioned Tyler's credibility. Jimenez had no performance issues to tip the scale in finding a disputed issue

---

[2]Brozenec asserts that not all department heads, whose budgets were reduced, were fired. Pl. Brief at 13 (citing Def. Resp. at ¶ 37). Her comparison to Yap, a founder of the company, and Chris Schneider, head of information technology and human resources, is misplaced as both continued to serve as department heads. Following Brozenec's termination, the marketing department consisted of only one person.

of fact as in *Yonehara*, 2004 WL 2222184, at *16. Pl. Resp. at ¶ 33. Brozenec has not shown age bias on the part of her managers that tipped the balance in *Zielonka v. The First Nat'l Bank of Chicago,* No. 92 C 1875, 1994 WL 568696, at *8 (N.D. Ill. Oct. 12, 1994) (Plunkett, J.).

Viewing the facts in Brozenec's favor, she has not shown that First Industrial's reasoning was pretextual. *Anderson*, 13 F.3d at 1126 (termination of employee to reduce salary costs did not constitute age discrimination). First Industrial is entitled to summary judgment on Counts III and IV.

## CONCLUSION

For the reasons set forth above, First Industrial's summary judgment motion is denied as to the gender discrimination claims in Counts I and II and granted as to the age discrimination claims in Counts III and IV.

ENTER:

Suzanne B. Conlon
United States District Judge

December 8, 2010